**UNITED STATES of America**

v.

**Eugene A. SCHAPPEL.**

**Crim. No. 460–68.**

United States District Court,
District of Columbia.

June 30, 1969.

Daniel Harris, Asst. U. S. Atty., Washington, D. C., for plaintiff.

John O. Harper, Washington, D. C., for defendant.

MEMORANDUM

GASCH, District Judge.

This case in which the indictment charged the defendant with the offenses of robbery and assault with a dangerous weapon came on for trial by the Court, trial by jury having been waived. Defendant and one Archie A. Hawk, Jr., (now a fugitive) were charged jointly in a three-count indictment with one count of robbing Lewis A. Chottiner of money of the value of $2,800. The second and third counts charge assault with a dangerous weapon against Chottiner and one Brooks, respectively. A stipulation entered into by and between respective counsel sets forth facts sufficient to prove these counts.

The defense in the case is insanity. The defense relies upon the testimony of a private psychiatrist, Dr. Henry J. Myers and a psychologist from St. Elizabeth's Hospital, Dr. Blum, as well as lay testimony offered by Michelle Warren and the defendant's sister, Mrs. Billie Binar. Dr. Myers examined defendant at the Jail for about one hour and a half and reached the conclusion that defendant was suffering from mental illness. This was predicated upon a lifelong history of maladjustment and drug usage. He also related that the defendant had been hospitalized at the Clifton T. Perkins State Hospital in 1955; that he was unstable and impulsive; had paranoid trends. The Doctor found evidence of mental deterioration diagnosed as paranoid schizophrenia. The defendant had reported auditory hallucinations; said people were talking about him. The defendant reported hearing voices and dogs baying. While at St. Elizabeth's Hospital, he had made attempts at suicide. The nurses' comments reflected that he had appeared depressed. Dr. Myers rejected the conclusion the defendant was malingering.

Dr. Blum, a psychologist, testified that his findings reflected a serious mental illness. He found that there was a chronic maladjustment and a feeling of inadequacy in life. His psychological test reflected deviations from the normal pattern. He also took into consideration a history of attempted suicides and hallucinatory experiences reported by the Perkins State Hospital at which the defendant had been a patient. He also took into consideration reports that defendant had appeared agitated and depressed. His psychological tests were consistent with the hallucinatory experiences. He further testified the Bender Gestalt geometric test results reflected no organic impairment but indicated a self-centered individual characterized by impulsivity and lack of motivation. Dr. Blum thought the Rorschach Card was

significant in that it reflected uncontrolled responses to color. The tests also indicated some malingering.

Miss Michelle Warren, at whose home defendant had a room, testified she saw him frequently; recalls that he talked in a loud tone; sometimes she heard him screaming. When she went to find out the reason for this conduct, she observed him in fits of temper "like he was in another world." Sometimes he got along well and sometimes he seemed angry with the world. These fits seem to be associated with drinking. He could not seem to understand why he was not like other people. He paid approximately $30 a week in rent but the witness did not know from what source he got the money. He used drugs and engaged in drinking.

Defendant's sister, Mrs. Billie Binar, testified that she gave her brother a job in her restaurant. His behavior was strange. On one occasion she watched him on the telephone, heard a shot ring out and took a gun away from him. Thereafter, grabbing a butcher knife, the defendant said he would kill himself.

The Government relied largely on the testimony of Doctors Kunev and Platkin of St. Elizabeth's Hospital whose conclusions were predicated upon examination of the data accumulated by the observations of Hospital personnel and interviews with the defendant, as well as laboratory and psychological tests. Dr. Kunev concluded that defendant was without mental disorder. Shortly thereafter, defendant attempted to slash his wrists and said he did not want to go to Jail. On another occasion, he locked himself in a bathroom and attempted to set the room on fire. It was necessary to call the fire department to get the room open. Medication has been given him because of these suicidal attempts and fear that the cuts, which seemed superficial, might become infected. The defendant has sought help from Hospital personnel to enable him to stay in the Hospital rather than in Jail. Dr. Kunev's finding that defendant was without mental disorder is shared by Doctors Platkin and Weickhardt.

Subsequently defendant after requesting an interview with Dr. Kunev told the latter that he was tired of trying to prove that he is sick and that he understands that he cannot fool the Hospital. Thereafter there was a second staff conference at which time the records from the Perkins State Hospital were available. Those at the conference, Dr. Platkin, Dr. Weickhardt, and Dr. Kunev, agreed that defendant was without mental disorder.

Dr. Blum's psychological testing results were available and were considered.

Dr. Kunev summarized the objectives of these psychologicals: to test the emotional state of the person, i. e., his feelings; to test his inner life, his fantasies, his emotions. The psychiatrist's objective is the evaluation of the patient in the Hospital; to ascertain how much of this feeling, how much of these emotions, how much of this fantasy and inner-life of the person influences his behavior. As long as these feelings, emotions, and fantasies do not affect his behavior, he does not have a mental illness. When one's behavior is substantially affected or impaired by these fantasies or feelings or emotions, then one can conclude that there is a mental illness, that is to say, when his behavior is no longer under the control of his reasoning, his thinking, and his judgment. The psychological testings merely reveal the presence of fantasies, emotions, etc.; they do not illustrate how behavior may or may not be influenced by them. Psychological tests are useful in assisting a psychiatrist in making a diagnosis but they are not to be regarded as a complete diagnosis of a person's mental condition.

With respect to the contention that defendant had hallucinations, the witness stated that the defendant told him of developing an interest in self-hypnosis. As a result of his reading and study of the subject, he learned how to subject himself to a trance during which he would hear voices. When he is out of

an institution, he seeks no psychiatric help for this self-induced condition.

Following the conduct concerning which the sister testified, defendant was encouraged by her to seek help or to go to a hospital. He refused.

With respect to his expressed fear of persecution because, as he put it, the police were after him, the doctors attached diagnostic significance to this at first but thereafter following repeated conferences, after evaluating his life adjustment when not in an institution, determined that there was in fact a realistic basis for his apprehension and consequently it was not an indication of mental illness. Defendant stated he had expensive tastes in clothes, shoes, and drugs and no steady employment sufficient to produce the income necessary to procure them. Accordingly, he committed criminal acts for the reason that he needed money. At the staff conference, the defendant pointed to the shoes which he was wearing and stated that they cost $65 and that his suits usually cost at least $100.

Observation of this defendant by ward and staff personnel at St. Elizabeth's has been close because of his self-mutilation attempts. These, he conceded, were undertaken to convince the doctors that he was suffering from a mental illness and this in turn flowed from a desire to stay in the Hospital rather than return to Jail.

Defendant has explained to the doctor that he has three choices—going on the street where he would constantly be sought by the police because of his criminal activities or two, going to Jail where the guards are likely to pick on him because his older brother killed a guard at Lorton or three, staying in a mental hospital.

On cross-examination, Dr. Kunev was questioned about defendant's prior work record. He related that this was explained by defendant as resulting from a police record, lack of education, expensive tastes, including use of drugs which precluded his reliance on the meager income he could gain from lawful employment. When questioned about the administering of tranquilizers at St. Elizabeth's Hospital to the defendant, Dr. Kunev stated that this was not for the treatment of a mental illness but to minimize the possibility of self-mutilation.

The Court finds that defendant was not at the time of the crime alleged suffering from a mental illness. The Court accepts the testimony of Doctors Kunev and Platkin for the reason that they had a much more extensive opportunity of observing, interviewing, and studying the pertinent records in defendant's case than did the private psychiatrist on whose testimony defendant relied.

Accordingly, the Court finds defendant guilty beyond a reasonable doubt as charged.

The matter is referred for presentence investigation and report.